## N THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL RUIZ<br>3126 Lakeside Drive<br>Sailorsburg, PA 18353<br><br>               Plaintiff,<br><br>v.<br><br>CENTRAL TRANSPORT<br>INTERNATIONAL, INC.<br>6955 Chrisphalt Drive<br>Bath, PA 18014<br><br>               Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Michael Ruiz ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Central Transport International, Inc. ("Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff initiates this action contending that Defendant violated his rights protected by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. Plaintiff further contends that Defendant unlawfully terminated his employment in retaliation for applying for worker's compensation benefits, in violation of Pennsylvania's public policy exception to the at-will employment doctrine and Pennsylvania's Worker's Compensation Act.

### PARTIES

2. Plaintiff Michael Ruiz is a citizen of the United States and Pennsylvania, where he currently maintains a residence at 3126 Lakeside Drive, Sailorsburg, PA 18353.

3. Defendant Central Transport International, Inc. is a business entity organized and existing under the laws of the State of Michigan, with a principal place of business located at 12225, Stephens Road, Warren, MI 48089.

## JURISDICTION AND VENUE

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were more fully set forth at length herein.

5. On or about December 7, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's Charge of Discrimination was docketed as Charge No. 530-2017-00848 and was filed within one hundred and eighty (180) days of the unlawful employment practice.

6. By correspondence dated September 13, 2017 Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against Defendant.

7. On or about November 16, 2017, within the statutory timeframe applicable to his claims, Plaintiff filed the instant action.

8. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This action is authorized and initiated pursuant to the ADA.

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as his federal claims.

12. The venue in this district is proper pursuant to 28 U.S.C. § 1391, as the parties reside in this judicial district, doing business therein, and the unlawful employment practices of which Plaintiff is complaining were committed in this district.

## FACTUAL BACKGROUND

13. Plaintiff began his employment with Respondent in November 2015 in the position of Forklift Operator and was subsequently transferred to the position of "Yard Jockey" at Defendant's location at 6955 Chrisphalt Drive, Bath, PA 18014.

14. Over the course of his employment with Defendant, Plaintiff received positive reviews of his performance, occasional raises, and no significant discipline.

15. Plaintiff's job duties as a Yard Jockey involved loading and unloading trucks, lifting objects of approximately 50-100 pounds, and moving cargo trailers between loading docks.

16. On June 6, 2015, Plaintiff was assisting a newly hired employee with raising the legs of a cargo trailer for the purpose of moving the trailer to a different loading dock within Defendant's facility.

17. In the course of assisting his co-worker with this task, the crank that Plaintiff was using to raise the trailer's legs broke and his right hand became trapped under the trailer, resulting in a deep laceration to the pinky side of Plaintiff's right hand.

18. The laceration that Plaintiff sustained in this regard amounts to a disability within the meaning of the ADA in that it substantially impairs major life activities such as lifting heavy objects and operating machinery over an extended period of time.

19. As a result of his injury, Plaintiff went to the emergency room of Lehigh Valley Hospital ("LVH") later that same day and was told by the treating physician that he needed to allow the laceration 3-7 days to heal before returning to his employment on a full-duty basis. Upon arriving at the LVH emergency room, Plaintiff reported the injury as work-related.

20. Significantly, Plaintiff only went to the LVH emergency room *after* Plaintiff's immediate supervisor, Michael Stoner ("Mr. Stoner"), informed him that he did not want Plaintiff to report the injury to the physician sitting on Defendant's worker's compensation panel.

21. In fact, Mr. Stoner specifically directed Plaintiff to go the emergency room instead of Defendant's worker's compensation doctor.

22. Additionally, Mr. Stoner refused to even drive Plaintiff to the emergency room. Rather, Plaintiff was simply told to "call his wife."

23. In accordance with ER physicians' instructions, Plaintiff went into work the following day, June 7, 2016, and requested to be transferred to a light duty assignment.

24. In response, Mr. Stoner simply told Plaintiff "we don't have light duty."

25. Accordingly, despite Plaintiff's injury, and in fear of losing his job, Plaintiff attempted to resume his normal job duties. However, the following day, June 8, 2016, Plaintiff was sent home as a result of being "under review" for allegedly having accruing too many attendance points.

26. Significantly, prior to Plaintiff's request for a light duty assignment, the alleged issue of poor attendance had never been brought to Plaintiff's attention. Approximately one week later, on June 15, 2016, Plaintiff was terminated from employment with Defendant on the grounds of having accumulated too many attendance points.

27. As a result of the foregoing, Plaintiff believes and thus avers that the reason provided for his termination was pretextual and that his employment was terminated on account of his disability and in retaliation for his request for an accommodation in connection with the same.

## COUNT I
### Americans with Disabilities Act
### 42 U.S.C. § 12101, *et seq.*
### Discrimination and Retaliation

28. Paragraphs 1 through 27 are hereby incorporated by reference as though the same were more fully set forth at length herein.

29. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act of 1990.

30. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

31. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

32. Plaintiff's request for medical leave to seek treatment for the above-mentioned conditions constituted a request for a reasonable accommodation.

33. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees has violated the ADA by terminating Plaintiff's employment because of his actual and/or perceived disabilities and request for a reasonable accommodation in connection thereto.

34. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable federal law.

## COUNT II
### Worker's Compensation Retaliation

35. Paragraphs 1 through 34 are incorporated herein by reference as though the same were more fully set forth at length herein.

36. At all times relevant hereto, Defendant was subject to the provisions of the Pennsylvania Worker's Compensation Act ("PWCA").

37. The PWCA, and its accompanying public policy, prohibit an employer from taking any adverse employment action against an employee in retaliation for that employee exercising his or her rights to file a petition for worker's compensation benefits thereunder.

38. As a result of Plaintiff's work-place injuries set forth above, Plaintiff reported his injury as work-related and submitted a claim for worker's compensation benefits against Defendant.

39. It is believed and therefore averred that Defendant terminated Plaintiff's employment in retaliation for Plaintiff filing a petition for worker's compensation benefits under the PWCA.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant him the maximum relief allowed by law, including, but not limited to:

a. Back wages, front pay, loss of fringe benefits, and raises in an amount to be determined at trial;

b. Compensatory, exemplary, and/or punitive damages;

c. Pre-judgment interest in an appropriate amount; and

d. Such other and further relief as is just and equitable under the circumstances;

e. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

MURPHY LAW GROUP, LLC

By: _____
Michael Murphy, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
215.375.0961 or 267.273.1054
murphy@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: 11/16/2017

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.